UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELZIE L. COLEMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. EDCV 13-1834 AGR<br><br>MEMORANDUM OPINION AND ORDER |

    Plaintiff Elzie L. Coleman filed this action on October 15, 2013. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 9, 10.) On July 11, 2014, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

    Having reviewed the entire file, the court reverses the decision of the Commissioner and remands this matter for proceedings consistent with this opinion.

# I.

## PROCEDURAL BACKGROUND

On November 19, 2009, Coleman filed applications for disability insurance benefits and supplemental security income alleging an onset date of May 20, 1990. Administrative Record ("AR") 154-60. The applications were denied initially as was Coleman's request for reconsideration. AR 81-86, 93-98. Coleman requested a hearing before an Administrative Law Judge ("ALJ"). AR 105. On August 15, 2011, the ALJ conducted a hearing at which Coleman, his sister, and a vocational expert ("VE") testified. AR 40-68. On September 1, 2011, the ALJ issued a decision denying benefits. AR 27-35. On July 11, 2013, the Appeals Council denied the request for review. AR 6. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Coleman had not suffered from a disability since May 20, 1990, the alleged onset date. AR 35.

The ALJ found that Coleman has the severe impairments of muscle disorders due to gunshot wounds, learning disorder, and hypertension. AR 29. He has the residual functional capacity ("RFC") to perform light work except he requires a sit/stand option, is limited to simple routine tasks, and must work indoors. AR 31. He is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that he can perform. AR 34-35.

### C. Listing 12.05

Coleman contends the ALJ erred by failing to find that Coleman did not meet or equal Listing 12.05, intellectual disability.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

At step three of the sequential analysis, the claimant bears the burden of demonstrating that his impairments are equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id.* at 141; *see also Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Listing 12.05 requires evidence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22." 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.05. The required level of severity is satisfied when subparagraph A, B, C or D is met. *Id.* Subparagraph C requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal,

4

performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." *Id.* § 12.00(D)(6)(c).

Coleman contends that he meets Listing 12.05(C)'s IQ requirement ("valid verbal, performance, or full scale IQ of 60 to 70") because the record contains results from three separate IQ tests showing that he had verbal, performance, and full scale IQ scores of 70, 69, and 67, respectively, at the age of seven; 70, 68, and 66 at the age of ten; and 70, 69, and 67 at the age of forty-four. AR 220-21, 247. Dr. Goldman, the consulting clinical psychologist who tested Coleman's IQ when he was forty-four years old, opined that those scores were "a minimally valid reflection of the claimant's current functioning due to fair to poor effort." AR 247.

Relying on Dr. Goldman's assessment, the ALJ found that Coleman did not meet Listing 12.05(C)'s IQ requirement: "[T]he claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limiting of function. Childhood intelligence scores appear invalid when compared to similar recent scores achieved with suboptimal effort." AR 30.

The Ninth Circuit, in an unpublished decision, stated: "We do not doubt that an ALJ can decide that an IQ score is invalid. The regulation's inclusion of the word 'invalid' in Listing 12.05C makes the ALJ's authority clear." *Thresher v. Astrue*, 283 Fed. Appx. 473, 475 (9th Cir. 2008). In a footnote, the court stated:

> We have never decided what information is appropriately looked to in deciding validity. Some courts have said that the score can be questioned on the basis of 'other evidence,' but have not discussed exactly how other evidence impacts the validity of the score itself. Other courts have been more explicit and have indicated that in questioning a score the ALJ must find some empirical link between the evidence and the score.

*Id.* at 475 n. 6; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D.6.a

5

("[S]ince the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."); *see also Wedge v. Astrue*, 624 F. Supp. 2d 1127, 1131-35 (C.D. Cal. 2008) (summarizing factors from out-of-circuit cases, such as evidence showing high possibility of malingering, daily activities inconsistent with IQ scores, inconsistencies between test results and conflicting medical opinions); *Vasquez v. Astrue*, 2012 WL 590019, at *6-7 (C.D. Cal. Feb. 21, 2012) (unpublished) (same).

   The ALJ discounted the validity of Coleman's IQ scores at all ages based on Dr. Goldman's statement that, at age 44, the test results were "minimally valid" due to Coleman's "fair to poor" effort.[2]  AR 30, 247.  Dr. Goldman noted that Coleman's results indicated "he is not putting forth his best effort."  AR 248.

   At the hearing, Coleman's attorney stated that Coleman did use his best efforts and his IQ scores were consistent with his previous scores at younger ages.  AR 44.  Coleman did not complete high school and attended special education classes throughout his school years.  AR 45.  Coleman took IQ tests at ages seven, ten, and forty-four.  He obtained the same verbal IQ score (70) on all three tests as well as virtually identical performance IQ scores (69, 68, and 69) and virtually identical full scale IQ scores (67, 66, 67).  All of Coleman's scores are in the 60 through 70 range, and his consistent performance on IQ tests taken at three different points in his life indicates that these scores are valid indicators of his abilities.  *See e.g.*, *Garland v. Astrue*, 2010 WL 454492, at *2 (C.D. Cal. Feb. 8, 2010) (rejecting ALJ's conclusion that the claimant's IQ scores were invalid for lack of effort where they were "largely consistent with school testing done on [the claimant] eight years earlier" and one score was identical).  Despite

---

[2] At the hearing, the ALJ stated that he did not believe Coleman was malingering as to his mental issues.  AR 67.

6

concerns about whether Coleman put forth his best effort, Dr. Goldman opined that his scores were a "minimally valid reflection" of Coleman's current functioning and that Coleman had borderline intellectual functioning. AR 247-48.

On this record, the ALJ's finding that Coleman did not have a valid verbal, performance or full scale IQ of 60 through 70 is not supported by substantial evidence. AR 30.[3]

The ALJ made no findings as to whether Coleman's impairments satisfied the other requirements in Listing 12.05(C). Accordingly, the matter is remanded for consideration of whether Coleman satisfies the other requirements in Listing 12.05(C) for intellectual disability.[4]

### D. Sit/Stand Option

Coleman contends that the ALJ erred in relying on the VE's testimony at step five of the sequential analysis.

The Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do. *Lounsburry*, 468 F.3d at 1114. If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits. If the Commissioner cannot meet this burden, the claimant is disabled and entitled to disability benefits. *Id*.

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id*.

---

[3] The Commissioner assumes that the ALJ relied on internal agency guidance about childhood IQ scores when it decided that Coleman's childhood IQ scores were invalid. However, the court's review is limited to reasons cited in the ALJ's decision. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.")

[4] Coleman points out that his subsequent application for benefits was granted.

7

In doing so, the ALJ must pose a hypothetical for the VE that outlines the limitations of the particular claimant. *Delorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991). Thus, "when a claimant must alternate periods of sitting and standing, the ALJ is directed to consult a vocational expert." *Id.*; *see also* SSR 83-12. *Id.*

The ALJ included the sit/stand option in the hypothetical he presented to the VE. AR 64-65. The VE responded that a hypothetical person with this limitation could perform the representative jobs of packing machine operator, electronics worker and ticket taker. AR 35, 65. The ALJ asked the VE whether this testimony was consistent with the Dictionary of Occupational Titles (DOT), and the VE answered in the affirmative. AR 66.

Coleman argues that the VE's testimony conflicts with the DOT. The DOT is silent as to whether the jobs identified here can accommodate a sit/stand option. *See* DOT 920.685-082 (packing machine operator); DOT 726.687-010 (electronics worker); DOT 344.677-014 (ticket taker).

The Ninth Circuit has not addressed the question of whether an apparent conflict with the DOT arises when the DOT is silent as to a particular mental or physical requirement. This court agrees with the decisions that decline to find an "apparent" conflict when the DOT is silent about a particular mental or physical requirement and the claimant's counsel failed to raise or identify any conflict to the ALJ. *See, e.g.*, *Herrera v. Colvin*, No. ED CV 13-1734-SP, 2014 WL 3572227, *9 (C.D. Cal. Jul. 21, 2014) ("[T]he DOT is silent as to whether [the jobs identified by the VE] can accommodate a sit/stand option . . . the VE's testimony supplemented the DOT in this regard."); *Strain v. Colvin*, CV 13-01973-SH, 2014 WL 2472312, *2 (C.D. Cal. June 2, 2014) ("[T]he VE's testimony based on the sit/stand restriction does not conflict with the DOT but instead provides 'more specific information than is contained in the DOT.'" (citation omitted)).

The ALJ did not err in relying upon the VE's testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ( "A VE's recognized expertise

provides the necessary foundation for his or her testimony. Thus, no additional foundation is required."); *Avila v. Cohen*, 2014 WL 359246, *7 n.9 (C.D. Cal. Feb. 3, 2014).

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 18, 2014

ALICIA G. ROSENBERG
United States Magistrate Judge

9